ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| ALFONSO RODRÍGUEZ RAMÍREZ<br><br>RECURRIDA<br><br>v.<br><br>IP SUCCESS CORP.<br><br>RECURRENTE | KLRA202500085 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos al Consumidor<br><br>Caso Núm.: SAN-2024-0017797<br><br>SOBRE: Reglamento contra Prácticas y Anuncios Engañosos |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2025.

Compareció la recurrente IP Success Corp. (en adelante, "IP" o "recurrente"), mediante recurso de revisión administrativa presentado el 6 de febrero de 2025. Nos solicitó la revocación de la *Resolución* emitida y notificada el 3 de diciembre de 2024 por el Departamento de Asuntos del Consumidor (en adelante, "DACO"). En esa *Resolución,* el DACO declaró a ha lugar la querella presentada por el Sr. Alfonso Rodríguez Ramírez (en adelante, "señor Rodríguez Ramírez" o "recurrido") y le ordenó a IP a pagar la cantidad de $18,826.00.

Por los fundamentos que expondremos a continuación, se **desestima** el recurso de epígrafe.

**-I-**

El señor Rodríguez Ramírez presentó *Querella Enmendada[2]* en la cual alegó que —mediante engaño e intimidación— la tienda de

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.
[2] Apéndice del recurrente, anejo IV, págs. 18-24.

nombre comercial Bellísima le vendió un producto para la cara y le facturó a sus tarjetas de créditos las cantidades siguientes: $1,115.00; $7,470.50 y $6,355.50. Adujo, además, que de haber tenido conocimiento del precio real de los productos, no hubiese comprado nada. Por lo cual, solicitó la devolución de $14,921.00, el pago de daños emocionales y económicos por la cantidad de $10,000.00 y el pago de $5,000.00 por costas y honorarios de abogado.

A esos efectos, el **3 de diciembre de 2024**, DACO emitió y notificó *Resolución*[3] en la cual hizo constar que celebró una vista administrativa el 1 de octubre de 2024. Además, conforme a la prueba documental y testifical, DACO hizo las siguientes determinaciones de hechos:

1. El Querellante es una persona de 88 años.

2. El 23 de enero de 2024 el Querellante fue al centro comercial Plaza Las Américas e ingresó al establecimiento de la Querellada, conocido como Bellísima, con la intención de reparar su reloj. El Querellante basó su decisión en su conocimiento previo de que, en ese establecimiento operaba una joyería a la que el Querellante había acudido previamente para este tipo de servicios.

3. Ante la presencia del Querellante en el establecimiento de la Querellada, una empleada de la Querellada le indicó que no reparaban relojes pero que vendían productos para la piel y le ofreció al Querellante unos productos para la cara.

4. La Querellada indagó tres tarjetas de crédito del Querellante e hizo tres transacciones por la cantidad de $1,115.00, $7,470.50 y $6,355.50 respectivamente, para un total de $14,941.00. El Querellante no autorizó estas transacciones y en los tres recibos aparecen, respectivamente, tres firmas diferentes las cuales no son la firma del Querellante.

5. El Querellante se retiró de la tienda con un producto y posteriormente recibió una llamada telefónica del servicio al cliente de unas de sus tarjetas de crédito, en la que la indicaron que la transacción realizada en Bellísima fue identificada como sospechosa.

6. Ante esto, el 24 de enero de 2024 el Querellante regresó a la tienda de Bellísima y les indicó que deseaba devolver el producto, a lo que la Querellada le indicó que había que llamar al dueño de la tienda.

---

[3] *Íd.,* anejo II, págs. 3-10.

7. El Querellante presentó una solicitud de reembolso e indicó que no se había realizado ningún servicio, que tenía una condición del corazón y que recibió una llamada de Costco en la que le dijeron que la compañía hacía fraude. Los productos indicados fueron una crema suero de colágeno y SPF para un total solicitado de $13,826.00. La diferencia de $1,115.00 corresponde a un producto que el Querellado obtuvo y el cual desechó. A pesar de que el formulario indicaba que la Querellada se comunicaría con el cliente entre 24 a 48 horas, el Querellante no obtuvo respuesta por parte de la Querellada.

8. Ante esto, el 31 de enero de 2024 el Querellante presentó Querella de epígrafe en la que alegó en síntesis que fue engañado en la tienda de la Querellada. Como remedio, el Querellante solicitó la devolución del dinero junto con el pago de intereses acumulados. Posteriormente, el 6 de marzo de 2024 el querellante presentó Querella Enmendada alegando en síntesis que fue engañado de manera fraudulenta por parte de la Querellada. Como remedio, el querellante solicita, la devolución de $14,921.00, el resarcimiento en daños y angustias mentales por la cantidad de $10,000.00 y el pago de $5,000.00 por concepto de costas y honorarios de abogado.

9. El Querellante se ha visto limitado de utilizar sus tarjetas de crédito y actuando de manera ilusa, sin pleno conocimiento de las posibles implicaciones, desechó las tarjetas de crédito con la intención de evitar futuros cargos.[4]

Mediante la referida *Resolución*, DACO determinó que la conducta de IP constituyó una situación de dolo grave que vició el consentimiento del señor Rodríguez Ramírez. Por lo cual, concluyó que el contrato de venta era anulable y conllevaba la devolución de las prestaciones. Además, determinó que la inacción de IP era una actuación temeraria. Así pues, DACO declaró a ha lugar la querella presentada por el señor Rodríguez Ramírez y le ordenó a IP a pagar las cantidades siguientes: (i) $13,826.00 en concepto de devolución; (ii) $2,500.00 en concepto de resarcimiento en daños y perjuicios; y (iii) $2,500.00 en concepto de honorarios de abogados, para un total de $18,826.00 más los intereses legales correspondientes.

En desacuerdo, el **26 de diciembre de 2024**, IP presentó *Moción Solicitando Reconsideración*.[5] Adujo que DACO determinó asuntos no comprendidos en la *Querella Enmendada* y sobre los

---

[4] *Íd.,* págs. 3-4.
[5] *Íd.,* anejo III, págs. 12-17.

cual no tiene jurisdicción en conformidad con su ley orgánica. Específicamente, detalló lo siguiente: (i) DACO tenía la obligación de recibir la prueba que se disponía a presentar, debido a que su reglamento no establecía un procedimiento y término claro para ello; (ii) DACO no tenía jurisdicción para atender asuntos bajo la Ley Núm. 121-2019, según enmendada, conocida como "Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores", 8 LPRA sec. 1511 *et seq.*; y (iii) DACO no tenía la facultad para imponer sanciones de daños ni el pago de honorarios de abogados.

Así las cosas, el DACO emitió el 7 de enero de 2025 y notificó al día siguiente, la *Resolución en Reconsideración* en la que denegó la solicitud de reconsideración.[6]

Inconforme, el de 6 febrero de 2025, IP acudió ante este Tribunal mediante el recurso de epígrafe y señaló los errores siguientes:

> **Primer Error:** La Querella Enmendada se presentó bajo el Reglamento contra Prácticas y Anuncios Engañosos de 28 de mayo de 2015 de la agencia administrativa, DACO, por falta de una política corporativa clara sobre devolución de mercancía. En particular, se presentó prueba por la Parte Querellante para sustentar el cumplimiento de dicho reglamento y de forma arbitraria la agencia administrativa impidió que la Parte Querellada presentara su prueba aduciendo la notificación no adecuada de la misma, lo cual no está claramente definido en el Reglamento de Procedimiento Adjudicativos, aprobado del 13 de junio de 2011.

> **Segundo Error:** La agencia administrativa, DACO, resolvió asuntos que no están comprendidos en el Reglamento contra Prácticas y Anuncios Engañosos del 28 de mayo de 2015. Por ejemplo, la agencia administrativa no tiene jurisdicción para resolver asuntos bajo la Ley 121-2019, conocida como la Carta de Derechos y Política Publica del Gobierno a favor de los Adultos Mayores, y sí resolvió y/o tomó conocimientos sobre dicha ley a instancia de la Parte Querellante.

> **Tercer Error:** Erró la agencia administrativa, desde una perspectiva sustantiva y procesal del derecho administrativo, el actuar *ultra vires* e imponer sanciones a favor de la Parte Querellada de naturaleza de daños y perjuicios, los cuales no existen en el Reglamento de Procedimientos Adjudicativos del 13 de junio de 2011. Tampoco existe la determinación de imponer el pago de honorarios de abogados ni costas, en el

---

[6] *Íd.,* anejo I, págs. 1-2.

referido reglamento, menos aun sin haber mediado temeridad por la Parte Querellada.

Por su parte, el 25 de marzo de 2025, el señor Rodríguez Ramírez acudió ante nos mediante su *Moción de Desestimación y/o Alegato en Oposición a Revisión Administrativa*. Sostuvo que este Tribunal no tiene jurisdicción para atender el recurso de epígrafe por varias razones, a saber: (i) IP presentó ante DACO la *Moción de Reconsideración* fuera del término jurisdiccional de veinte (20) días; (ii) IP remitió por correo electrónico copia del recurso de epígrafe sin el ponche de presentación; y (iii) IP incumplió con el Reglamento del Tribunal de Apelaciones por omitir en el apéndice del recurso documentos esenciales del expediente administrativo.

Con el beneficio de la comparecencia escrita de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Jurisdicción**

En nuestro ordenamiento jurídico se ha establecido que la jurisdicción "es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias que tiene ante sí". *R&B Power Inc., v. Junta de Subasta*, 213 DPR 685, 698 (2024); *FCPR V. ELA et al.*, 211 DPR 521, 529 (2023). En ese sentido, el factor jurisdiccional es el primer factor que debe considerar un tribunal en toda situación jurídica que se presente para su adjudicación. *R&B Power Inc., v. Junta de Subasta*, supra, pág. 698; *FCPR V. ELA et al.*, supra, pág. 530. De manera que los asuntos jurisdiccionales son privilegiados y deben ser atendidos de forma preferente. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020).

Acorde con ello, los tribunales estamos emplazados a ser fieles guardianes de nuestra jurisdiccion y carecemos de discreción para asumirla donde no la hay. *Íd.* Por ende, la falta de jurisdicción tiene los siguientes efectos:

(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Fuentes Bonilla v. ELA*, 200 DPR 364, 372-373 (2018).

Cónsono con lo anterior, la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83, confiere autoridad al Tribunal para desestimar un recurso de apelación o denegar un auto discrecional, a iniciativa propia o a petición de parte, cuando carezca de jurisdicción. De esa forma, si al hacer el análisis jurisdiccional el tribunal concluye que carece de jurisdicción para adjudicar la cuestión ante su consideración, tiene el deber de así declararlo y proceder con la desestimación del recurso apelativo sin entrar en los méritos de la controversia. *Ruíz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 269 (2018).

**B. Revisión administrativa y el efecto interruptor de la moción de reconsideración**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

Así pues, la Sección 4.2 de la LPAU dispone sobre los términos para instar un recurso de revisión ante el Tribunal de Apelaciones como sigue:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

3 LPRA sec. 9672.

Cónsono con lo anterior, nuestro Alto Foro ha reiterado que la oportuna presentación de una moción de reconsideración ante la agencia tiene el efecto de interrumpir el término para solicitar la revisión judicial. *Pérez v. VPH Motor Corp.,* 152 DPR 475, 484 (2000). No obstante, ha aclarado que una moción de reconsideración que no se presente en tiempo no tiene efecto interruptor alguno. *López Rivera v. Autoridad Fuentes Fluviales,* 89 DPR 414, 417-418 (1963).

La Sección 3.15 de la LPAU provee los términos para presentar —de manera oportuna— una solicitud de reconsideración de la determinación de la agencia administrativa y el término para solicitar una revisión judicial, a saber:

> La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso.

3 LPRA sec. 9655.

Además, cabe puntualizar que, el derecho a revisar las decisiones de las agencias administrativas está sujeto a la oportuna presentación del recurso y a su correcto perfeccionamiento. *Isleta v. Inversiones Isleta Marina,* 203 DPR 585, 590 (2019).

## C. Reglamento Núm. 8034

El Reglamento Núm. 8034 de 14 junio de 2011 del Departamento de Asuntos del Consumidor, conocido como "Reglamento de Procedimientos Adjudicativos" (en adelante, "Reglamento Núm. 8034") tiene la finalidad de establecer un procedimiento uniforme para la adjudicación de las querellas presentadas ante DACO.

En particular, la Regla 29 del Reglamento Núm. 8034, establece que una parte adversamente afectada por orden o resolución —final o parcial— emitida por DACO, podrá solicitarle que reconsidere su determinación. La referida regla dispone como sigue:

> La parte adversamente afectada por una resolución u orden parcial interlocutoria o final podrá solicitar Reconsideración. La solicitud de Reconsideración deberá ser presentada y recibida en el Departamento, además de notificada a la parte contraria, dentro del término jurisdiccional de veinte (20) días desde la fecha de archivo en autos de la notificación de resolución u orden.

Asimismo, la Regla 29 del Reglamento Núm. 8034 permite que una parte no conforme con la resolución de su solicitud de reconsideración pueda presentar una revisión judicial mediante el cumplimiento de los requisitos de la LPAU.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

Resulta primordial, como foro revisor, examinar nuestra jurisdicción para atender el recurso que nos ocupa. Veamos.

Luego de la presentación del recurso de epígrafe, el señor Rodríguez Ramírez —aquí recurrido— nos solicitó su desestimación, toda vez que la recurrente presentó ante DACO la *Moción Solicitando Reconsideración* fuera del término jurisdiccional y, por tanto, adujo que este Tribunal no tenía jurisdicción. Tiene razón.

Según señalamos en el acápite II de esta *Sentencia*, la LPAU dispone que una parte adversamente afectada por una orden o resolución final de una agencia administrativa tiene un término de treinta (30) días —desde la fecha del archivo en autos de la copia de la notificación de la referida resolución— para solicitar una revisión judicial ante el Tribunal de Apelaciones. Este término puede ser interrumpido mediante la presentación oportuna de una solicitud de reconsideración. *Pérez v. VPH Motor Corp.,* 152 DPR 475, 484 (2000). Sobre esto, tanto la Sección 3.15 de la LPAU así como la Regla 29 del Reglamento Núm. 8034, establecen que la parte afectada adversamente afectada por una orden o resolución emitida por DACO tiene un término jurisdiccional de veinte (20) días —desde la fecha de archivo en autos de la notificación de la referida resolución— para solicitar su reconsideración. Además, nuestra jurisprudencia ha reconocido que la presentación de una solicitud de reconsideración fuera del término no tiene efecto interruptor alguno. *López Rivera v. Autoridad Fuentes Fluviales*, supra, págs. 417-418.

Así pues, el transcurso de esos veinte (20) días jurisdiccionales sin la presentación oportuna de una moción de reconsideración ante DACO, tiene el efecto de no interrumpir el término de treinta (30) días para ir en revisión judicial ante el Tribunal de Apelaciones.

En el presente caso, DACO emitió y archivó en autos copia de la notificación de la *Resolución* el 3 de diciembre de 2024 en la cual resolvió la *Querella Enmendada* presentada por el señor Rodríguez Ramírez.[7] Por tanto, el término de veinte (20) días para solicitar reconsideración ante DACO venció el 23 de diciembre de 2024.

---

[7] Surge del expediente que, el recurrente argumentó en la *Moción Solicitando Reconsideración* que la notificación de la *Resolución* fue depositada en el correo el día 6 de diciembre de 2024, mientras que en el recurso de epígrafe alegó que fue el día 4 de diciembre de 2024. Si bien el recurrente adujo —de forma inconsistente—que la notificación de la *Resolución* fue depositada en el correo en

No obstante, surge del expediente que IP presentó su *Moción Solicitando Reconsideración* el 26 de diciembre de 2024. Esto es, el recurrente presentó una solicitud de reconsideración con tres (3) días de tardanza. Así pues, el término de treinta (30) días para recurrir ante esta Curia nunca fue interrumpido, por lo que este término venció el 2 de enero de 2025. Sin embargo, el recurso de epígrafe fue instado ante este Tribunal el 6 de febrero de 2025. Ante esta realidad fáctica, queda meridianamente claro que la recurrente presentó su recurso de revisión administrativa ante este Tribunal luego de expirado el término.

Así pues, habiéndose presentado tardíamente el presente recurso, concluimos que carecemos de jurisdiccion para atenderlo. Por consiguiente, en ausencia de jurisdicción, procede su desestimación.

**-IV-**

Por los fundamentos previamente expuestos, se **desestima** el recurso de epígrafe.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

fecha distinta a su notificación, lo cierto es que este no presentó prueba del matasello aun cuanto tuvo amplia oportunidad para hacerlo. Incluso, ni siquiera instó su oposición a la solicitud de desestimación presentado por el recurrido.